## IN THE CIRCUIT COURT FOR BRADLEY COUNTY, TENNESSEE

| | |
|---|---|
| JUSTIN R. BAILEY, | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | )     DOCKET NUMER: *V-21-603* |
| | ) |
| **WACKER POLYSILICON NORTH** | )     **JURY DEMAND** |
| **AMERICA LLC,** | ) |
| | ) |
| **Defendant.** | ) |

---

## SUMMONS
### (Attorney will serve)

---

TO:     Wacker Polysilicon North America LLC
       Registered Agent: Brian L. Eftink
       553 McBryant Road, N.W.
       Charleston, Tennessee 37310-6639

      You are hereby summoned to answer and make defense to a bill of complaint which has been filed in the Circuit Court of Bradley County, Tennessee in the above styled case. Your defense to this complaint must be filed in the office of the Circuit Court Clerk of Bradley County, Tennessee on or before thirty (30) days after service of this summons upon you. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

      WITNESSED and Issued this *12th* day of *November* 2021.

                            Gayla Miller, Circuit Court Clerk

                            By *Geri Romurger*
                            Deputy Circuit Court Clerk

            **PATRICK, BEARD, SCHULMAN & JACOWAY, P.C.**
Attorneys for Plaintiff   Eric J. Oliver, BPR # 017509

               537 Market Street, Suite 300, Chattanooga, TN 37402   (423) 756-7117

Plaintiff's Address _____

      Received this _____ day of _____ 2021

                              /S/ _____

**Exhibit A**

**State of Tennessee,**
County of Bradley

I, Gayla Miller, Clerk of the Circuit Court in and for the State and County aforesaid, hereby certify that the within and foregoing is a true and correct copy of the original writ of summons issued in this case.

**Gayla Miller**, Circuit Court Clerk

By _____D.C

## OFFICER'S RETURN

I hereby certify that I served this summons together with the complaint as follows:

☐    On _____ 2021, I delivered a copy of the summons and complaint to the defendant, _____

_____

☐    Failed to serve this summons within 30 days after its issuance because: _____

_____

**Bradley County Sheriff**

_____
Deputy Sheriff

## CLERK'S RETURN

I hereby acknowledge and accept service of the within summons and receive copy of same, this _____ day of _____ 2021.

_____
Defendant

**Gayla Miller**, Circuit Court Clerk

By _____ D.C.

### NOTICE TO DEFENDANT (S)

Tennessee law provides a ten thousand dollar ($10,000.00) personal property exemption from execution or seizure to satisfy a judgment. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the clerk of the court. The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued in the filing of the list. Certain items are automatically exempt by law and do not need to be listed; these include items of necessary wearing apparel (clothing) for yourself and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible, and school books. Should any of these items be seized you would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer.

IN THE CIRCUIT COURT FOR BRADLEY COUNTY, TENNESSEE

| | |
|---|---|
| **JUSTIN R. BAILEY,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **DOCKET NUMER:** V-21-603 |
| ) | |
| **WACKER POLYSILICON NORTH** ) | **JURY DEMAND** |
| **AMERICA LLC,** ) | |
| ) | |
| **Defendant.** ) | |

## COMPLAINT

Comes now the Plaintiff, Justin R. Bailey,[1] through counsel, and asserts the following claims for personal injuries and damages against Defendant Wacker Polysilicon North America LLC[2]:

### I. <u>PARTIES</u>

1.   The Plaintiff, Justin R. Bailey, is a resident of Walker County, Georgia.

2.   The Defendant, Wacker Polysilicon North America LLC is a for profit Tennessee limited liability company and can be served with process through its registered agent, Brian L. Eftink, 553 McBryant Road N.W., Charleston, TN 37310-6639.

### II. <u>JURISDICTION AND VENUE</u>

3.   This action arises out of Plaintiff's personal injuries suffered in Bradley County, Tennessee, as a direct and proximate result of exposure to hydrochloric acid while working at Defendant's polysilicon manufacturing plant in Charleston, Tennessee. Subject matter jurisdiction and personal jurisdiction are proper. Venue is properly laid in Bradley County, Tennessee.

---

[1] ("Plaintiff")
[2] ("Wacker")

1

### III. FACTUAL ALLEGATIONS

**A. The November 13, 2020 Explosion**

4.      Wacker owns and operates a polysilicon manufacturing plant[3], located at 553 Wacker Blvd., Charleston, Tennessee 37310 that employs approximately 650 individuals. Polysilicon is used in the manufacturing of solar panels, among other products.

5.      Plaintiff works as a pipefitter for Jake Marshall, LLC, a mechanical contractor that performs work for Wacker, and was assigned to Wacker's Plant in Charleston, Tennessee.

6.      Prior to the beginning of most shifts while the Plaintiff was working at the Plant, a Wacker representative(s) met with a Jake Marshall foreman to go over Wacker's work assignments for the day. As part of this procedure, Wacker conducts a hazard assessment and issues safe work permits for the corresponding contractor assignment.

7.      No work or assignments can be performed at the Plant without Wacker's approval, direction and authorization.

8.      On November 13, 2020, Wacker assigned Jake Marshall the task of checking/torquing/retorquing the bolts located on its AW234 heat exchanger located on the fifth floor of the Plant's C234 HCL Generation Building[4]. Wacker had performed work on this exact area just a few days before November 13, 2020.

9.      On November 13, 2020, a history of problems with the graphite heads/nozzles would come to haunt the Plaintiff and four other workers.

10.     Upon information and belief, the System and all individuals working on the System are subject to Wacker's Process Safety Management program.

---

[3] (the "Plant")
[4] (the "System")

2

11. When the System operates as "live" or "hot," hydrochloric acid runs throughout.

12. At all times, Wacker controlled whether the System was live or turned off/locked out.

13. Federal regulations classify hydrochloric acid as a member of the class of "toxic and reactive highly hazardous chemicals which present a potential for a catastrophic event at or above the threshold quantity."[5]

14. Wacker instructed Jake Marshall to check/torque/retorque the System's bolts knowing that the System was operating hot with ultrahazardous hydrochloric acid running under pressure through the System. Wacker made the decision to not "lock out" or turn off the system.

15. Because the System had not been turned off/locked out, the torquing of the System's bolts is commonly referred to as "hot torquing."

16. Upon information and belief, Wacker generated this work assignment to determine whether the System's bolts had been affected/loosened after repair work or maintenance on the System just a few days before the November 13, 2020 explosion.

17. Plaintiff was one of the workers assigned that day to check/hot torque the System's bolts. To access the System, which is located on the fifth floor, Plaintiff used scaffolding erected adjacent to the C234 HCL Generation building.

18. Plaintiff donned a chemical suit and respirator for this particular assignment as required by Wacker because the work being performed was deemed an ultrahazardous activity.

19. Thereafter, while working in the area directed by Wacker, Plaintiff began checking/hot torquing the System's bolts as directed by the work permit issued by Wacker.

---

[5] 29 C.F.R. § 1910.119 (Appendix A).

3

20.     Other workers affiliated with a separate contractor also were present when Plaintiff began to check/hot torque the System's bolts. Those workers were not wearing chemical suits.

21.     Around 10:15 a.m. on November 13, 2020, after checking multiple bolts on the System's heat exchanger, Plaintiff proceeded to check the bolts on the heat exchanger's graphite head. Plaintiff hot torqued the first two of the four bolts without incident. However, upon hot torquing bolt three of four, the System's heat exchanger exploded and created a fireball and explosion of hydrochloric acid.[6] Upon information and belief, Wacker's alarm system did not deploy (which has occurred in the past after accidents with prior TOSHA citations).

22.     The Explosion caused hydrochloric acid to be discharged from the area around the System's graphite nozzle connection to the AW234 heat exchanger.

23.     While attempting to flee from the Explosion, Plaintiff's protective suit got caught and subsequently ripped. Plaintiff then was exposed to the now airborne hydrochloric acid through his lungs, eyes, and skin. There was only one means of entry and exit, and Wacker had been warned prior to November 13, 2020 of the hazards and dangers of constructing only one means of exit in the event of an emergency.

24.     The Explosion also injured other workers present in the area. One worker received fatal injuries because he was forced to jump from the tower. Four other workers, including Plaintiff, were hospitalized after being trapped and exposed to the hydrochloric acid.

25.     Plaintiff's injuries from the explosion were so severe that he had to be airlifted by helicopter from the Plant to Vanderbilt University Medical Center.

26.     Among his injuries, Plaintiff suffered chemical burns throughout his body and was hospitalized for several days, followed by a subsequent stay at a Nashville rehabilitation facility.

---

[6] (the "Explosion")

4

After his release from the rehabilitation facility, Plaintiff's continued to be treated by medical specialists regarding the injuries to his eyes, lungs, vocal cords, and skin.

27. Despite the injuries Plaintiff suffered from being exposed to the hydrochloric acid, he returned to work a few months after the Explosion. However, he continues to suffer from the long-term effects of his injuries, which are permanent.

28. Upon information and belief, prior to the Explosion, Wacker received a user manual written by Crane ChemPharma, titled *Instructions for Installation and Safe Operations- ANSI*[7], which gave specific instructions addressing, in part, the torquing and retorquing of the System's flange bolts.

29. The Instructions state that the torquing and retorquing of the System's flange bolts should only occur when the System is in an "ambient, cooled state, never while the process is at elevated temperature, or excessive force could be applied to the plastic faces." Therefore, the Instructions prohibit the hot torquing the System's flange bolts.

30. When the System torquing maintenance instruction was issued, Wacker was aware that the System's Instructions prohibited torquing or retorquing the flange bolts while the System was in an elevated temperature state.

31. Nevertheless, Defendant still proceeded to issue a safe work permit for the torquing maintenance of the System while "hot," despite prior knowledge from SGL Carbon that the System in the Desorption Building/Tower should not be torqued "hot" or above 15 FT pounds for the graphite heads. No warning signs were posted on or near the graphite nozzles even though the graphite heads had a history of known problems and failures, and substantially lower torque values.

---

[7] (the "Instructions")

5

32.     Defendant Wacker received communication from SGL Carbon prior to the November 13, 2020 explosion that the graphite heads in the Desorption Building/Tower should not be torqued while "hot".

33.     Defendant Wacker received communication from SGL Carbon prior to the November 13, 2020 explosion that the graphite heads in the Desorption Building/Tower should not be torqued above 15 FT pounds.

34.     Defendant Wacker was aware of prior problems with the graphite heads including design issues, cracking of the heads, issues with vibration causing failure of the graphite heads and other problems, yet Defendant provided no warnings or instructions to Plaintiff or his employer about the dangerous history of problems with the graphite heads and the special and unique care required when working on the graphite heads.

35.     Defendant Wacker had a duty to warn and notify Plaintiff of these issues but failed to do so despite superior knowledge. The foreseeability of harm to the Plaintiff was far outweighed by any burden on the Defendant.

36.     Thereafter, the State of Tennessee Department of Labor and Workforce Development Division of Occupational Safety and Health[8] (TOSHA) opened an investigation into the Explosion. On March 30, 2021, TOSHA issued its Citation and Notification of Penalty to Wacker. Therein, TOSHA determined that Wacker committed a Serious safety violation:

> 29 C.F.R. § 1910.132(d)(1)(i): The employer did not select and have each affected employee use, the types of personal protective equipment that would protect the affected employee(s) from the hazards identified in the hazard assessment.
>
> In that types of PPE were not selected to protect the affected Pen Gulf, Inc. employees of the hazards identified during the hazard assessment for Jake Marshal LLC's safe work permit, which exposed the employees to chemical overexposure hazards.

---

[8] ("TOSHA").

6

37.     TOSHA assessed at corresponding $3,200 penalty against Wacker for the Serious violation that Wacker subsequently paid.

38.     Wacker temporarily shut down the area following the explosion.

39.     The U.S. Chemical Safety Board has also opened a federal investigation into the Explosion.

**B. Wacker's history of injuries to workers at the Plant since 2016 and corresponding TOSHA investigations.**

40.     Multiple safety incidents resulting in worker injuries and corresponding TOSHA investigations preceded the Explosion.

41.     After investigating a February 11, 2016 incident at the Plant wherein workers were exposed to chemicals, TOSHA assessed penalties against Wacker totaling $6,450.00 for five safety violations categorized as Serious:

- 29 C.F.R. 1910.119(f)(1)(i)(A): The employer did not develop and implement written operating procedures that provide clear instructions for safety conducting activities involved in each covered process consistent with the process safety information and did not address all of the elements in the initial startup of the process. On 2/11/16, the employer did not implement clear and concise instructions on how to safely perform the initial startup of the distillation process in building B232.

- 29 C.F.R. 1910.119(I)(1): The employer did not establish or implement written procedures to manage changes to equipment, and changes to facilities that affect a covered process: On 2/11/16, the employer rerouted steam away from the usual condensate vessels around building B232 and did not ensure the new procedure did not pose a hazard in the event of a chemical release.

- 29 C.F.R. 1910.165(b)(1): The employee alarm system did not provide warning for necessary emergency action as called for in the emergency action plan, or for reaction time for safe escape of employees from the workplace or the immediate work area, or both: On 2/11/16, the employer did not activate the gas alarm in buildings B244 and B246 prior to the employees being exposed to HCl gas.

- 29 C.F.R. 1910.134(d)(1)(ii): The employer did not ensure that NIOSH-certified respirator selected was used in compliance with the conditions of its certification.

7

On 2/11/16, an employee used a Scott 90 Series respirator to close a purge valve leaking trichlorosilane (TCS).

- 29 CFR 1910.134(k)(1)(iii): The employer did not ensure that each user could demonstrate knowledge of how to use the respirator effectively in emergency situations, including situation in which the respirator malfunctions: On 2/11/16, an employee used a Scott's emergency escape respirator to close a purge valve leaking trichlorosilane instead of using it to vacate the area.

42. On April 22, 2016, TOSHA assessed a $3,500 penalty against Wacker for a violation categorized as Serious:

29 C.F.R. 1910.147(e)(1): Before lockout or tagout devices were removed and energy was restored to the machine or equipment, authorized employees did not inspect the work area to ensure that nonessential items had been removed and that machine or equipment components are operationally intact: In that safe work practices were not developed to inspect the internal components of the vertical condenser for the buildup of metal chlorides following an intentional increase in the temperature of the reactor vessel for the CSR building which caused multiple employees to be exposed to toxic and explosive chemicals.

43. Multiple workers were injured at the Plant after exposure to toxic and explosive chemicals on August 30, 2017. Thereafter, TOSHA's investigation determined that Wacker committed two Serious violations and assessed a corresponding $10,800 in penalties against Wacker on February 22, 2018:

- 29 CFR 1910.119(f)(4) The employer did not development and implement safe work practices to provide for the control of hazards during operations such as lockout/tagout; confined space entry; opening process equipment or piping; and control over entrance into facility by maintenance, contractor, laboratory, or other support personnel: In that safe work practices were not developed to inspect the internal components of the vertical condenser for the buildup of metal chlorides following an intentional increase in the temperature of the reactor vessel for the CSR building which caused multiple employees to be exposed to toxic and explosive chemicals.

- 29 CFR 1910.147(d)(6): Prior to starting work on machines or equipment that had been locked out or tagged out, the authorized employee did not verify that isolation and de-energization of the machine or equipment has been accomplished: In that employees were exposed to toxic and explosive chemicals as a result of chemical energy sources trapped inside of the vertical condenser prior to disconnecting it from the system.

8

- 29 CRR 1910.132(d)(1)(i): The employer did not select and have each affected employee use, the types of personal protective equipment that would protect that affected employee(s) from the hazards identified in the hazard assessment: In that employees were not required to wear a full body chemical protective suit while exposed to toxic and explosive chemicals which resulted in chemical and thermal burns to multiple employees.

44.     Eight days later, on September 7, 2017, an explosion inside the Plant's Hydrogen Recovery building resulted in a plant worker, a firefighter, four deputies, and seven community residents receiving medical treatment at local hospitals. Wacker suspended production of polysilicon at the Plant for several months after this explosion. TOSHA opened an investigation and determined that Wacker committed multiple Serious safety violations and assessed corresponding penalties against Wacker on March 2, 2018 totaling an initial $25,400, later reduced to $14,400:

- 29 C.F.R. 1910.119(d)(3)(ii): The employer did not ensure that equipment complies with recognized and generally accepted good engineering practices.

  In that the employer did not ensure that equipment in the process complies with recognized and generally accepted good engineering practices (RAGAGEP)

  a) In that the employer failed to ensure that the deflagration venting in the following Hydrogen compressor rooms located in Building B156 complied with National Fire Protection Association (NFPA) 68 Standard on Explosion Protection:

    1) Compressor room 114 housing compressor T101 was not designed with adequate deflagration venting to reduce the likelihood of extensive structural damage and injuries to personnel.

    2) Compressor room 110 housing compressor T102 was not designed with adequate deflagration venting to reduce the likelihood of extensive structural damage and injuries to personnel.

    3) Compressor room 112 housing compressor T103 was not designed with adequate deflagration venting to reduce the likelihood of extensive structural damage and injuries to personnel.

9

4) Compressor room 115 housing compressor T104 was not designed with adequate deflagration venting to reduce the likelihood of extensive structural damage and injuries to personnel.

b) In that the employer failed to ensure that the Variable Frequency Drive room 111 located in Building B156 had equipment capable of providing positive pressure to prevent a hazardous atmosphere as referenced in the National Fire Protection Association ((NFPA) 496 Standard for Purged and Pressurized Enclosures for Electrical Equipment.

- 29 C.F.R. 1910.119(j)(6)(iii): The employer did not assure that maintenance materials, spare parts, and equipment were suitable for the process application for which they were used:

  In that the Neac Hydrogen Compressor T103 had undergone a revamp where the 20 inch piston was replaced with a 24 inch piston. The new piston failed during operation resulting in the head of the compressor being blown off and the deflagration of the escaping hydrogen resulted in extensive damage to the building.

- 29 C.F.R. 1910.147(c)(6)(i): The employer did not conduct a periodic inspection of the energy control procedure at least annually to ensure that the procedure and the requirement of this standard were being followed:

  In that the employer did not conduct a periodic inspection of the lockout procedures to ensure that employees were following line break procedures in B156 to ensure all employees exposed to the hazards of a release were protected.

- 29 C.F.R. 1910.147(f)(3)(ii)(D): Each authorized employee did not affix a personal lockout or tagout device to the group lockout device before working on the machine or equipment:

  In that the new employees and intern employees participating in the line breaks that require the used of group lockout, were not required to put an individual lock on the group lockout box to ensure that they are not exposed to the unexpected start up, energization, or release of stored energy.

- 29 C.F.R. 1910.147(c)(7)(i): The employer did not provide adequate training to ensure that the purpose and function of the energy control program was understood by employees:

  In that the employer did not provide training to all authorized employees so that they were knowledgeable of the methods and means necessary to perform work safely under the employer's Lock, Tag, Try program.

- 29 C.F.R. 1910.1200(f)(6)(ii): Except as provided in 29 C.F.R. 1910.1200(f)(7) and 29 C.F.R. 1910.1200(f)(8), the employer did not ensure that each container of

10

hazardous chemicals in the workplace was labeled, tagged or marked with the product identifier and words, pictures, symbols, or combination thereof, which provide at least general information regarding the hazards of the chemicals and which, in conjunction with the other information immediately available to employees under the hazard communication program, would provide employees with the specific information regarding the physical and health hazards of the hazardous chemical.

In that a bottle of unknown chemical was found in the control room of Building B156 that was not labeled as to what was in the container (presumed to be alcohol) and what hazards were associated with it.

- 29 C.F.R. 1910.1200(H)(2)(iii): The employer did not provide information to the employees are to the location and availability of the written hazard communication program, and material safety data sheets required by 29 C.F.R. 1910.1200:

In that all employees were not aware of where the Safety Data Sheets were located for the hazardous chemicals that they worked with such as, but not limited to, Chlorosilanes and Hydrogen.

45.     The Explosion on November 13, 2020 was not the only safety incident during that calendar year. Approximately three months prior to the Explosion, contract workers were exposed to the chemical silicon tetrachloride while performing maintenance at the Plant on July 27, 2020. The exposed workers suffered serious injuries.

## IV: CAUSES OF ACTION

### Count One: Negligence

46.     Plaintiff repeats and realleges his prior statements as if fully stated herein.

47.     As the owner and operator of the Plant and System, Wacker owed a duty to provide a safe work environment to all of the workers at the Plant, including the Plaintiff.

48.     Wacker owed the Plaintiff a heightened duty of care due to the dangerous activity of storing and manufacturing dangerous chemicals under pressure in its System and instructing the Plaintiff to perform maintenance of its System.

11

49.     Wacker breached this duty by directing Plaintiff (and approving a safe work permit) to perform bolt torquing maintenance on the System while hot and not locked out. Wacker knew that the system was dangerous because of the prior issues with the graphite heads/nozzles including issues with leaking, cracking and substantially lower torque values that were unique to the graphite heads.

50.     Wacker failed to properly warn Plaintiff that the System was running unreasonably dangerous while hot because it had not been locked out and failed to properly warn Plaintiff about the specific bolt torque problems with the graphite head/nozzle or value fluctuations for the System for the job assignment on the day of the Explosion.

51.     Wacker also failed to warn the Plaintiff, despite a duty to do so, of the history of problems with the graphite heads, including a history of cracking, and that torquing the graphite heads while the system was hot created an unreasonable and foreseeable danger of the head cracking.

52.     Wacker had superior knowledge of the prior problems and issues with the graphite heads and failed to provide that information to Plaintiff or to include any warnings during the safety work order permit.

53.     Wacker's negligence was the sole and proximate cause of the Explosion and Plaintiff's personal injuries, including medical and hospital expenses, pain, suffering, loss of enjoyment of life, mental anguish, lost earnings, and lost earning capacity.

54.     Wacker was aware, prior to the Explosion, that many areas of the Plant, including the area where Plaintiff was injured, contained only one escape route in the event of an emergency. Wacker had a duty to correct this known danger by providing additional escape routes but intentionally elected to ignore this known danger. As a result of only one escape route at the time

12

of the explosion, Plaintiff and others were unable to safely escape from the explosion and sustained injuries and damages that would not have otherwise occurred. Wacker recklessly and intentionally placed cost over safety.

## Count Two: Res Ipsa Loquitor

55.     Plaintiff repeats and realleges his prior statements as if fully stated herein.

56.     Pursuant to the doctrine of Res Ipsa Loquitor, Wacker's negligence in causing the Explosion should be inferred.

57.     The System does not ordinarily explode and release hydrochloric acid into the air into the air unless during maintenance it is being carelessly used.

58.     As the operator of the Plant, Wacker was in exclusive control or management of the System, specifically whether the System was live, at the time of the Explosion.

59.     Plaintiff suffered serious injuries as a result.

## Count Three: Ultra-Hazardous Activity Strict Liability

60.     Plaintiff repeats and realleges his prior statements as if fully stated herein.

61.     Wacker engaged in the ultra-hazardous activity of storing and manufacturing dangerous chemicals under pressure in its System and instructing Plaintiff to perform maintenance on the System by hot torquing its bolts, which housed hydrochloric acid, a dangerous chemical which federal regulations list as a member of its category of "toxic and reactive highly hazardous chemicals which present a potential for a catastrophic event at or above the threshold quantity."[9] This activity was made even more dangerous when combined with Wacker's knowledge of the problems and issues with the graphite heads.

62.     As a result, Plaintiff suffered injuries.

_____

[9] 29 C.F.R. § 1910.119 (Appendix A)

13

63.     Plaintiff's physical injuries sustained from exposure to hydrochloric acid were of the kind that make hot torquing of the System's bolts on graphite nozzles an abnormally dangerous activity.

64.     Wacker is therefore responsible for Plaintiff's injuries, regardless of the care or lack thereof used by Wacker in giving instruction to hot torque the System's graphite head and bolts.

### Count Four: Inherently Dangerous Work

65.     Plaintiff repeats and realleges his prior statements as if fully stated herein.

66.     To the extent Wacker may claim that Plaintiff's bodily harm was legally caused by the acts or omissions of one or more of its contractors at the Plant, Wacker is nevertheless subject to liability for Plaintiff's bodily harm since Wacker had Plaintiff engage in the inherently dangerous work of performing bolt torquing maintenance on a System that was not locked out and running hot (with a known graphite flange problem).

67.     Wacker should have recognized that the work of performing bolt torquing maintenance on a System with a history of graphite head problems that was hot and not locked out would create a condition involving a peculiar risk of bodily harm to Plaintiff and others, unless special precautions were taken.

68.     Should Wacker argue that one or more of its contractors at the Plant failed to exercise reasonable care to take such precautions against the risk, Wacker is nevertheless liable since Wacker failed to take reasonable precautions against the known risk and had superior knowledge of the risk.

69.     The litany of worker injuries at the Plant since 2016 evidences Wacker's history of a failure to take reasonable precautions.

70.     As a result, Plaintiff suffered injuries.

14

## Count Five: Negligence *Per Se*

71.     Plaintiff repeats and realleges his prior statements as if fully stated herein.

72.     In its polysilicon manufacturing process at the Plant, Wacker had a duty to comply with federal laws and Occupations Safety and Health Standards regulations, including but not limited to, 29 C.F.R. § 1910.119, *et. al.* (Process safety management of highly hazardous chemicals) and 29 C.F.R. § 1910.147, *et. al.* (The control of hazardous energy).

73.     Wacker engaged in a covered process (or processes) through its manufacturing of Polysilicon at the Plant and is therefore an "Employer" pursuant to 29 C.F.R. § 1910.119, *et. al.*

74.     Plaintiff's employer, Jake Marshall, LLC, constitutes a "Contactor" pursuant to 29 C.F.R. § 1910.119(h)(1).

75.     29 C.F.R. § 1910.119(h) enumerates employer responsibilities to contractors.

76.     As an Employer, pursuant to 29 C.F.R. § 1910.119(h)(2)(ii), Wacker was required to inform Jake Marshall of the known potential fire, explosion, or toxic release hazards related to Jake Marshall's work assigned by Wacker on November 13, 2020 to perform maintenance on the System and the covered process.

77.     Wacker, however, upon information and belief, failed to satisfy the obligation owed to Jake Marshall pursuant to 29 C.F.R. § 1910.119(h)(2)(ii).

78.     TOSHA has assessed financial penalties against Wacker for multiple violations of 29 C.F.R. § 1910.119, *et. al.* since 2016.

79.     Wacker also constitutes an "Employer" pursuant to 29 C.F.R. § 1910.147, *et. al.*

80.     Plaintiff constitutes an "Affected Employee" pursuant to 29 C.F.R. § 1910.147, *et. al.*

15

81.     As an Employer, pursuant to 29 C.F.R. § 1910.147(C)(9), "affected employees shall be notified by the employer or authorized employee of the application and removal of lockout devices or tagout devices. Notification shall be given before the controls are applied, and after they are removed from the machine or equipment."

82.     TOSHA has assessed financial penalties against Wacker for multiple violations of 29 C.F.R. § 1910.147, *et. al.* since 2016.

83.     The lockout/tagout standard under 29 C.F.R. § 1910.147, *et. al.* applies to the servicing and maintenance of machines and equipment in which the unexpected energization or start up of the machines or equipment, or release of stored energy could cause injury to employees. Therefore, 29 C.F.R. § 1910.147, *et. al.* applies to Wacker's System, which should have been turned off and energy sources be locked-out "to prevent unexpected energization, start-up or release of stored energy during servicing and maintenance operations."[10]

84.     Wacker, however, upon information and belief, violated its obligation owed to Plaintiff pursuant to 29 C.F.R. § 1910.147(a)(3)(i) and (c)(9). It is undisputed that on November 13, 2020, the System was hot when Plaintiff began the System's maintenance.

85.     Wacker failed to utilize the lock out/tag out plan when it assigned Plaintiff to perform the maintenance work on the System.

86.     Wacker's violation or violations of one or more of these regulations caused the Explosion and Plaintiff's subsequent personal injuries.

87.     Wacker's violation or violations of one or more of any of the above-referenced statutory regulations of these regulations(s) constitutes negligence *per se* and was, or were, the

---

[10] 29 C.F.R. § 1910.147(a)(3)(i)

proximate cause/s of the Explosion and was/were and is/are the proximate cause/s of Plaintiff's impermanent and permanent personal injuries and economic damages and noneconomic damages.

## Count Six: Vicarious Liability

88.　　Plaintiff repeats and realleges his prior statements as if fully stated herein.

89.　　Wacker is vicariously liable for the acts and omissions of its employees, agents, or any person who is authorized to act on behalf of or in place of Wacker.

## Count Seven: Punitive Damages

90.　　Plaintiff repeats and realleges his prior statements as if fully stated herein.

91.　　Wacker has demonstrated a history of disregard for the safety of workers at the Plant, as evidence by the multiple penalties assessed by TOSHA against Wacker since 2016.

92.　　Wacker acted intentionally and recklessly in giving the instruction to hot torque the System and failing to provide proper warnings about the problems with the graphite flanges/nozzles.

## Prayer for Relief

Plaintiff suffered damages as a direct and proximate result of Wacker's negligent acts and omissions as set forth herein and shown at trial, including past and future pain and suffering, loss of enjoyment of life, mental anguish, lost earnings and earning capacity, medical and hospital expenses, disfigurement and permanent impairment.

WHEREFORE, Plaintiff respectfully requests the following:

A) that proper process issue and be served upon Wacker requiring it to appear and answer within the time period provided by law;

B) that the Plaintiff be granted a jury trial;

17

C) for the recovery of compensatory damages up to one million dollars ($1,000,000.00) for Plaintiff with the amounts to be set by the jury that hears the evidence in this case;

D) for recovery of punitive damages up to two million dollars ($2,000,000.00) against Wacker for acting intentionally and recklessly with the amounts to be set by the jury that hears the evidence in this case;

E) for the recovery of all costs, including, but not limited to, Tennessee Rule of Civil Procedure 54 discretionary costs; and

F) for such other and further relief to which the Plaintiffs may be entitled under law.

Patrick, Beard, Schulman & Jacoway, P.C.

By: _____

Richard A. Schulman, #0990
Eric J. Oliver, #017509
Robert W. Wheeler, #034485
Suite 300, Market Court
537 Market Street
Chattanooga, Tennessee 37402
Telephone: (423) 756-7117
Facsimile: (423) 267-5032
rschulman@pbsjlaw.com
eoliver@pbsjlaw.com
rwheeler@pbsjlaw.com

*Attorneys for Plaintiff*

18

STATE OF TENNESSEE, COUNTY OF BRADLEY
I, Gayla H. Miller, Clerk of the Circuit Court of said
County, do hereby certify that the foregoing is a true copy
of the _Complaint_ as same as
appears on file in my office.
WITNESS my hand and Official Seal at office in Cleveland,
Tennessee. This _8th_ day of _November_
20_21_ _GAYLA H. MILLER_ Clerk
_Gerri Comengu_ Deputy Clerk

# IN THE CIRCUIT COURT FOR BRADLEY COUNTY, TENNESSEE

JUSTIN R. BAILEY,     )
            )
  Plaintiff,      )
            )
v.            )  **DOCKET NUMER: V-21-603**
            )
**WACKER POLYSILICON NORTH** )  **JURY DEMAND**
**AMERICA LLC,**     )
            )
  Defendant.     )

---

## SUMMONS
### (Attorney will serve)

---

TO: Wacker Polysilicon North America LLC
   Registered Agent: Brian L. Eftink
   553 McBryant Road, N.W.
   Charleston, Tennessee 37310-6639

   You are hereby summoned to answer and make defense to a bill of complaint which has been filed in the Circuit Court of Bradley County, Tennessee in the above styled case. Your defense to this complaint must be filed in the office of the Circuit Court Clerk of Bradley County, Tennessee on or before thirty (30) days after service of this summons upon you. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

WITNESSED and Issued this _12th_ day of _November_ 2021.

         Gayla Miller, Circuit Court Clerk

         By _Gerri Rominger_
          Deputy Circuit Court Clerk

**PATRICK, BEARD, SCHULMAN & JACOWAY, P.C.**
Attorneys for Plaintiff _Eric J. Oliver, BPR # 017509_

_____ 537 Market Street, Suite 300, Chattanooga, TN 37402  (423) 756-7117

Plaintiff's Address _____

   Received this _____ day of _____ 2021

          /S/ _____

**State of Tennessee,**
County of Bradley

I, Gayla Miller, Clerk of the Circuit Court in and for the State and County aforesaid, hereby certify that the within and foregoing is a true and correct copy of the original writ of summons issued in this case.

**Gayla Miller**, Circuit Court Clerk

By _____ D.C

## OFFICER'S RETURN

I hereby certify that I served this summons together with the complaint as follows:

☑ On November 30 _____ 2021, I delivered a copy of the summons and complaint to the defendant, by certified mail return receipt. See attached Affidavit of Service.

☐ Failed to serve this summons within 30 days after its issuance because: _____

~~Bradley County Sheriff~~ Private Process

~~Deputy Sheriff~~ Chelsea Cuyle

## CLERK'S RETURN

I hereby acknowledge and accept service of the within summons and receive copy of same, this _____ day of _____ 2021.

_____
Defendant

**Gayla Miller**, Circuit Court Clerk

By _____ D.C.

## NOTICE TO DEFENDANT (S)

Tennessee law provides a ten thousand dollar ($10,000.00) personal property exemption from execution or seizure to satisfy a judgment. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the clerk of the court. The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued in the filing of the list. Certain items are automatically exempt by law and do not need to be listed; these include items of necessary wearing apparel (clothing) for yourself and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible, and school books. Should any of these items be seized you would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer.

# IN THE CIRCUIT COURT FOR BRADLEY COUNTY, TENNESSEE

| | | |
|---|---|---|
| JUSTIN R. BAILEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | DOCKET NUMER: V-21-603 |
| | ) | |
| WACKER POLYSILICON NORTH | ) | JURY DEMAND |
| AMERICA LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## AFFIDAVIT OF CHELSEA COYLE

I, Chelsea Coyle, being duly sworn, make oath as follows:

     1.     I am a resident of Tennessee and I have attained the age of eighteen (18) years;

     2.     I am not related to any party in this action, and further

     3.     On November 12, 2021, I mailed a copy of this Summons, Complaint and Plaintiff's First Set of Interrogatories and Request for Production via Certified Mail/Return Receipt Requested, Article #70201290000037710409, to Wacker Polysilicon North America, LLC – Brian L. Eftink, Registered Agent, 553 McBryant Road, N.W., Charleston, Tennessee 37310-6639 and said Summons, Complaint and Plaintiff's First Set of Interrogatories and Request for Production was served upon Lori King on November 30, 2021. (See Domestic Return Receipt attached).

_____
Chelsea Coyle

Sworn to and subscribed before me
this 7ᵗʰ day of December 2021.

_____
NOTARY PUBLIC
My commission expires: 4/27/25

*[Notary seal: ABIGAIL THORNTON, STATE OF TENNESSEE, NOTARY PUBLIC, HAMILTON COUNTY]*



SENDER: *COMPLETE THIS SECTION*

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Wacker Polysilicon North America LLC

Brian L. Eftink, Registered Agent

553 McBryant Road, N.W.

Charleston, Tennessee 37310-6639

9590 9402 6087 0125 9747 35

2. Article Number *(Transfer from service label)*

7020 1210 0000 3771 0409

*COMPLETE THIS SECTION ON DELIVERY*

A. Signature

X Lori King ☐ Agent ☐ Addressee

B. Received by *(Printed Name)*        C. Date of Delivery
Lori King                                        11|30|21

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:         ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☒ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☒ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053        Domestic Return Receipt



**USPS TRACKING #**

CHATTANOOGA TN 373

2 980 0011 PM 2 L

9590 9402 6087 0125 9747 35

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

**United States
Postal Service**

• Sender: Please print your name, address, and ZIP+4® in this box•

Patrick, Beard, Schulman & Jacoway, P.C.

537 Market St., Suite 300, Market Ct.

Chattanooga, TN 37402

*Bailey, Justin*          mw/ctc

cv-00307-DCLC-CHS   Document 1-1   Filed 12/16/21   Page 26 of 26   Pa
-02-124052